**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARY RENEAU and J. ROBERT RENEAU, acting as her Guardian ad Litem, | ) | |
| Plaintiffs, | ) | Case No. CIV-24-869-PRW |
| v. | ) | |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) | |
| Defendant. | ) | |

# ORDER

Before the Court is Defendant Allianz Life's Motion for Summary Judgment and Brief in Support (Dkt. 23). The motion is fully briefed and is ripe for decision. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment (Dkt. 23).

## *Background*

This action arises from a dispute over whether benefits are due under a qualified long-term care insurance policy. Allianz Life issued a policy to Mary Reneau in 2004.[1] As relevant, the policy provides a benefit when a licensed health care practitioner has certified that the insured is "chronically ill," defined in the policy as (1) being unable to perform

[1] Policy (Dkt. 23, Ex. 1).

without Substantial Assistance at least 2 Activities of Daily Living (ADLs) and Substantial Assistance is expected to be required for a period of at least 90 continuous days due to a Loss of Functional Capacity; or (2) requiring Substantial Supervision to protect yourself from threats to health and safety due to a Severe Cognitive Impairment.[2] Reneau's daughter submitted a claim on Reneau's behalf under the policy in August 2022, which was approved.[3] In March 2023, Allianz Life informed Reneau that it had completed a reassessment of her claim and approved her benefit eligibility through September 22, 2023.[4] After a second reassessment initiated in August 2023, Allianz Life terminated Reneau's benefits in September 2023.[5] Reneau appealed; Allianz Life upheld the decision.[6] Reneau filed another claim in December 2023, which was denied in April 2024.[7] Reneau appealed the denial of that claim; Allianz Life upheld the decision in July 2024.[8] Plaintiffs brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and punitive damages in a Complaint (Dkt. 1) filed in August 2024. Allianz Life filed this Motion (Dkt. 23) seeking summary judgment.

---

[2] *Id.* at 42; Mot. (Dkt. 23), at 1–2.

[3] Mot. (Dkt 23), at 5.

[4] *Id.*

[5] *Id.* at 5–6; Resp. (Dkt. 42), at 1. Allianz Life states that it terminated Reneau's benefits because "she no longer required Substantial Assistance with at least two ADLs, nor did she have Severe Cognitive Impairment for which Substantial Supervision was required." Mot. (Dkt. 23), at 2.

[6] Mot. (Dkt. 23), at 6, 9.

[7] *Id.* at 9, 11.

[8] *Id.* at 11–12.

## *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[9] Courts are not to weigh the evidence and determine the truth of the matter asserted, but instead are to determine only whether there is a genuine dispute for trial before the fact-finder.[10] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[11] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue for either party.[12]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[13] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at

---

[9] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[11] *Id.* at 248.

[12] *Id.*

[13] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of reh'g* (Jan. 23, 2003) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

trial."[14] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[15]

## ***Discussion***

### I. Reneau's Breach Claim

Allianz Life asks the Court to find that it is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim.

"The elements of a breach of contract action are: (1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach."[16] Under Oklahoma law, insurance contracts are construed like other contracts,[17] and "[w]hen policy provisions are clear, consistent, and unambiguous, [the court must] look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent."[18] "The interpretation of an insurance contract . . . is a matter of law for the Court to determine[.]"[19]

---

[14] *Id.*

[15] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (citing *Anderson*, 477 U.S. at 248).

[16] *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748–49 (Okla. 2021) (citing *Digit. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001)).

[17] *Bennett v. Allstate Life Ins. Co.*, 623 F. Supp. 3d 1236, 1244 (W.D. Okla. 2022) (citing *Equity Ins. Co. v. City of Jenks*, 184 P.3d 541, 544 (Okla. 2008); *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006)).

[18] *Id.* (citing *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014)).

[19] *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

The only element at issue here is whether Allianz Life breached the contract. The parties mainly disagree about whether Reneau is entitled to benefits due to her being "chronically ill," that is, whether she either (1) needs substantial assistance with performing at least 2 ADLs or (2) requires substantial supervision to protect herself from threats to health and safety due to a "severe cognitive impairment." Allianz Life points to evidence that Reneau's "primary care physician, psychiatric nurse practitioner, and assisted living facility caregivers" agreed that Reneau "did not require Substantial Assistance with two or more ADLs, nor did she have a Severe Cognitive Impairment."[20] The Court discusses these two "triggers"—the "ADL trigger" and the "severe cognitive impairment trigger"—in turn.

**ADL trigger**

In response to Allianz Life's argument that "[t]here is simply no evidence whatsoever to support that Mrs. Reneau required assistance with two or more ADLs after September 23, 2023,"[21] Plaintiffs state that one of Reneau's providers, Elizabeth Muburi, found that Reneau "refuses to eat unless she is given food," "will not eat unless . . . she is prompted to eat," and "won't shower for weeks at a time unless someone helps her."[22] On Allianz Life's Cognitive Questionnaire Form, though, Muburi indicated that the assistance Reneau needed to eat is "cueing/prompting," which does not satisfy the policy's definition

[20] Mot. (Dkt. 23), at 15.

[21] *Id.* at 18.

[22] Resp. (Dkt. 42), at 6–7. "Eating" is one of the ADLs listed in the policy. The policy defines "Eating" as "[f]eeding yourself by getting food into your body from a receptacle (such as a plate, cup or table), or by feeding tube or intravenously." Policy (Dkt. 23, Ex. 1), at 42.

of "substantial assistance."[23] Plaintiffs do not direct the Court's attention to evidence suggesting that Reneau needed "stand-by or hands-on assistance without which [she] would not be able to safely and completely perform" two ADLs.[24] So, even when viewed in the light most favorable to Plaintiffs, Plaintiffs have not shown a genuine issue for trial.

**Severe Cognitive Impairment trigger**

The parties agree on the definition of "severe cognitive impairment" but disagree as to whether Reneau had one.[25] Allianz Life points to evidence that Reneau's providers agreed that Reneau did not have a "severe cognitive impairment" as defined in the policy.

Plaintiffs respond by arguing that Reneau's condition satisfied the policy's definition of "severe cognitive impairment" because they can show evidence of Reneau's providers certifying an "impairment in . . . judgement as it relates to safety awareness,

[23] Questionnaire (Dkt. 23, Ex. 21), at 3. The policy defines "substantial assistance" as "[s]tand-by or hands-on assistance without which you would not be able to safely and completely perform the ADL. Stand-by assistance means the presence of another person within arm's reach of you that is necessary to prevent, by physical intervention, injury to you while you are performing the ADL. Hands-on assistance means direct physical assistance of another person." Policy (Dkt. 23, Ex. 1), at 40.

[24] Policy (Dkt. 23, Ex. 1), at 40.

[25] Mot. (Dkt. 23), at 4; Resp. (Dkt. 42), at 4 (stating that Plaintiffs "do[] not dispute" the definition of "severe cognitive impairment" cited by Allianz Life). The policy (and the parties) define "severe cognitive impairment" as "[t]he deterioration or loss of your intellectual capacity which is confirmed by a Physician and measured by clinical evidence and standardized tests that reliably measure your impairment in: short or long term memory; orientation as to people (such as who you are), place (such as where you are), or time (such as day, date and year); judgement as it relates to safety awareness, which requires supervision or verbal cueing by another person to protect yourself and others; or deductive or abstract reasoning." Mot. (Dkt. 23), at 15; Policy (Dkt. 23, Ex. 1), at 42.

which requires supervision or verbal cueing by another person to protect [her]self and others[.]"[26]

To qualify for benefits as "chronically ill" under the "severe cognitive impairment" trigger, Plaintiffs must show (1) a physician-confirmed deterioration of Reneau's intellectual capacity that is measured by clinical evidence and standardized tests that measure her impairment in judgment (as it relates to safety awareness) which requires supervision or verbal cueing by another person to protect her; (2) that severe cognitive impairment caused threats to health and safety; and (3) she needed substantial supervision to protect herself from those threats.[27]

Viewed most favorably to Plaintiffs, Plaintiffs have pointed the Court to just enough evidence to show a genuine dispute about whether Reneau "require[d] Substantial Supervision to protect [her]self from threats to health and safety due to a Severe Cognitive Impairment" and therefore is "chronically ill." Specifically, Plaintiffs have set forth evidence showing a genuine dispute over whether Reneau had an "impairment in . . . judgement as it relates to safety awareness" that is "confirmed by a Physician and measured by clinical evidence and standardized tests."[28]

First, Muburi, Reneau's psychiatric nurse practitioner, indicated that Reneau has "moderately severe cognitive impairment," which is described on the Cognitive Questionnaire Form as including the following features: (a) cognitive deficit evident on

---

[26] Resp. (Dkt. 42), at 4; Policy (Dkt. 23, Ex. 1), at 42.

[27] Policy (Dkt. 23, Ex. 1), at 42.

[28] *Id.*

casual interview; (b) abnormal cognitive screening tests; (c) may be physically able to perform ADLs but requires supervision and prompting; and (d) recent history of dangerous or bizarre behavior. Allianz Life reminds the Court that Muburi did not check the form's "severe cognitive impairment" box, but the form's criteria for "moderately severe cognitive impairment" meaningfully overlap with the policy's definition of "severe cognitive impairment."[29] Muburi further indicated that "[b]ecause of unsafe behavior, impaired judgment, [and] confusion," Reneau "requires . . . 24-hour supervision . . . within a facility" and that she "should never be left alone at home for any period of time or be allowed to leave [her] facility without a competent escort."[30]

Next, Dr. Lisa Farhood, Reneau's primary care physician, indicated that Reneau had "mild cognitive impairment" on a Cognitive Questionnaire Form in March 2024. But Dr. Farhood also indicated on the form that Reneau has "moderate or intermittent confusion that is causing impaired judgment and safety concerns." She added that that Reneau has "frequent falls from fainting and anxiety." Dr. Farhood concluded that Reneau required "intermittent supervision in a facility."[31] Further, Dr. Farhood twice administered a

---

[29] Cognitive Questionnaire Form (Dkt. 23, Ex. 21), at 2. For example, the form includes "recent history of dangerous or bizarre behavior" as a feature of "moderately severe cognitive impairment." The policy includes "impairment in . . . judgement as it relates to safety awareness" in its definition of "severe cognitive impairment." Policy (Dkt. 23, Ex. 1), at 42.

[30] Cognitive Questionnaire Form (Dkt. 23, Ex. 21), at 4.

[31] Cognitive Questionnaire Form (Dkt. 23, Ex. 23), at 3–5.

standardized test (the Montreal Cognitive Assessment) to Reneau and noted Reneau's scores (22 out of 30 and 20 out of 30) on the Cognitive Questionnaire Form.[32]

Because Plaintiffs have raised a genuine dispute over whether Reneau has a "severe cognitive impairment" and is therefore entitled to benefits under the policy, summary judgment is denied as to the breach of contract claim.

**II. Reneau's Bad-Faith Claim**

Allianz Life asks the Court to find that it is entitled to judgment as a matter of law on Plaintiffs' bad-faith claim.

Under Oklahoma law, "[a]n insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'"[33] However, "[t]he tort of bad faith does not foreclose the insurer's right to deny a claim; an insurer clearly has the right to resist payment and litigate any claim to which it has a reasonable defense."[34] The key in determining whether the insurer crossed the line into bad faith is the reasonableness of its behavior in handling the insured's claim. Put differently, "[t]he decisive question is whether the insurer had a good faith belief, at the time performance was requested, that there was a justifiable reason for withholding payment under the

[32] *Id.* at 4; Medical Records (Dkt. 23, Ex. 29), at 2; Medical Records (Dkt. 23, Ex. 22), at 5.

[33] *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) (quoting *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005)).

[34] *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611 (10th Cir. 1994).

policy."[35] In answering that question, courts consider whether the insurer fulfilled its obligation to "conduct an investigation reasonably appropriate under the circumstances."[36]

In determining whether to submit a bad-faith claim to the jury, courts generally use a two-step analysis.[37] First, the Court considers "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim."[38] "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'"[39] Second, if the Court finds that there is a legitimate dispute between the parties, the Court considers "whether the plaintiff offered specific additional evidence to demonstrate bad faith."[40] A plaintiff may, for example, demonstrate bad faith with "evidence that the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage, denied the claim for an illegitimate reason," treated the insured "[un]fairly," or "performed an inadequate investigation of the claim."[41]

Here, a legitimate dispute existed between the parties with respect to coverage of Reneau's claim. Allianz Life, pointing to the contract's definitions of "chronically ill,"

---

[35] *Id.* at 612 (citing *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)).

[36] *See id.* (quoting *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991).

[37] *Shotts*, 943 F.3d at 1315.

[38] *Id.*

[39] *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993) (citing *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)).

[40] *Shotts*, 943 F.3d at 1315.

[41] *Id.* (internal quotations and citations omitted).

"substantial assistance" with performing ADLs, and "severe cognitive impairment," claims that it denied Reneau's claim because its records established that Reneau "at most required assistance with only one ADL" and because "no provider has ever stated that Mrs. Reneau has a Severe Cognitive Impairment as defined by the Policy." Allianz Life argues that this evidence gives it "a reasonable, good faith belief" that Reneau was not entitled to benefits. Allianz Life continues by arguing that Plaintiffs have not shown "additional evidence of bad faith" as required by Oklahoma law. Allianz Life emphasizes that "Oklahoma law requires only a reasonable, not a perfect, investigation."[42]

The Court finds that a reasonable juror could find in favor of Allianz Life based on all facts known or that should have been known by Allianz Life when it denied Reneau's claim. A legitimate dispute existed between the parties.

Because there is a legitimate dispute between the parties, the Court looks to see whether Plaintiffs have presented additional evidence to show bad faith. Plaintiffs claim that Allianz Life failed to reasonably investigate "purported inconsistencies" in some of Reneau's health records.[43] Any reasonable investigation, Plaintiffs argue, would have included communications with Muburi, Reneau's psychiatric nurse practitioner. Plaintiffs put forth no evidence suggesting that Allianz Life did not review the relevant medical records and do not explain why the investigation could not be reasonable without additional communication with Muburi. Plaintiffs have not shown "that material facts were

---

[42] Mot. (Dkt. 23), at 20–23.

[43] Resp. (Dkt. 42), at 7.

overlooked or that a more thorough investigation would have produced relevant information that would have delegitimized [Allianz Life's] dispute of the claim."[44]

The Court finds that Plaintiffs have failed to offer sufficient evidence of Allianz Life's bad faith. Plaintiffs do not direct the Court's attention to facts that would allow a reasonable juror to determine that Allianz Life did not actually rely on the legitimate dispute in its denial of Reneau's claim, that Allianz Life denied Reneau's claim for illegitimate reasons, or that Allianz Life conducted an inadequate investigation.

The Court grants summary judgment on Plaintiffs' bad-faith claim.

**III. Punitive Damages**

Allianz Life asks the Court to find that it is entitled to judgment on the issue of punitive damages.

The issue of punitive damages "is dependent on and derivative of [Plaintiffs'] bad faith claim[]."[45] Because the Court grants summary judgment in Allianz Life's favor with respect to Plaintiffs' bad-faith claim, Plaintiffs' "request for punitive damages must fail, too."[46]

***Conclusion***

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Allianz Life's Motion for Summary Judgment (Dkt. 23).

---

[44] *Shotts*, 943 F.3d at 1318 (quoting *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012)).

[45] *Price v. CSAA Gen. Ins. Co.*, 687 F. Supp. 3d 1179, 1185 (W.D. Okla. 2023) (citing *Shotts*, 943 F.3d at 1314).

[46] *Id.* (citing *Shotts*, 943 F.3d at 1320).

**IT IS SO ORDERED** this 14th day of August 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE